**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JEFFREY DALE ELLSWORTH,     )   NO. CV 13-302-AS
                           )
          Plaintiff,   )
                       )   **MEMORANDUM OPINION**
     v.           )
                       )
CAROLYN W. COLVIN,        )
Acting Commissioner of Social   )
Security,                )
                       )
          Defendant.   )
_____)

**PROCEEDINGS**

On January 30, 2013, Plaintiff filed a Complaint seeking review of the Commissioner's denial of disability benefits. (Docket Entry No. 3). On August 1, 2013, Defendant filed an Answer and the Certified Administrative Record. (Docket Entry Nos. 14-15). On August 26, 2013, the matter was transferred and referred to the current Magistrate Judge. (Docket Entry No. 16). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 17-18). On December

5, 2013, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on the three issues relevant to the consideration of Plaintiff's claim (Docket Entry No. 26).  The Court has taken this matter under submission without oral argument.  See L.R. 7-15; See "Order," filed February 4, 2013 (Docket Entry No. 6).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff asserts disability based on the following physical and mental impairments: "emotional distress, knees, back and neck pain." (Administrative Record ("A.R.") 137).  Plaintiff claims that his disability began on June 1, 1991 when he sustained an injury to his neck.  Plaintiff has been incarcerated since 1991 and was released in May 2010. (A.R. 16).[1]  An Administrative Law Judge ("ALJ") examined the record and conducted an administrative hearing on December 6, 2011. (A.R. 24-59).  The ALJ heard testimony from Plaintiff (A.R. 31-45, 45-46), and vocational expert ("VE") Gregory Smith Jones.  (A.R. 45, 46-54). Plaintiff was and remains represented by counsel. (A.R. 25, 58). On December 22, 2011, the ALJ issued a decision finding that Plaintiff was not disabled and denying Plaintiff's application for disability benefits.  (A.R. 20).  On December 11, 2012, the Appeals Council denied review. (A.R. 1-5).

The ALJ followed the five-step evaluation process for determining whether a claimant is disabled as set forth in 20 C.F.R. § 404.1520, and

---

[1]   According to a Department of Corrections' medical consultant report dated February 15, 2005, Plaintiff has been incarcerated since 1995. (See A.R. 200).

2

made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since July 8, 2010, the date he submitted his application for disability benefits to the Social Security Administration (A.R. 14); (2) Plaintiff has the following severe medically determinable impairments: degenerative joint disease of the neck and bilateral knees, degenerative arthritis of the lumbar spine, depression and polysubstance abuse (Id.); (3) Plaintiff's impairments do not meet or equal a listing impairment (A.R. 14-15); (4) Plaintiff retains the residual functional capacity ("RFC") to perform light work with the following modifications: he "can occasionally push/pull with the bilateral lower extremities; occasionally climb, balance, stop, kneel, crouch, or crawl; must avoid work requiring far acuity; avoid concentrated exposure to extreme cold, unprotected heights and hazardous machinery; can occasionally interact with supervisors and coworkers; and never interact with the public." (A.R. 15); (5) Plaintiff has no past relevant work (A.R. 18); and (6) Plaintiff is able to perform jobs consistent with his age, education, work experience, and RFC that exist in significant numbers in the national economy. (A.R. 19). Specifically, the ALJ determined that Plaintiff could perform the requirements of representative light, unskilled occupations such as housekeeping cleaner, cafeteria attendant, and routing clerk. (Id.). In making these findings, the ALJ found Plaintiff's allegations and testimony regarding the intensity, persistence, and limiting effects of his symptoms to be less than fully credible, (A.R. 16-18), noting that "[t]he available medical record provides little objective support for the [plaintiff]'s allegations and, in fact, highlight the [plaintiff]'s devastating lack of credibility and actual ability to work at a

substantial gainful level at or even above the [RFC] set forth." (A.R. 16).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ erred: (1) in her assessment of Plaintiff's mental RFC; (2) in her credibility findings; and (3) in her reliance on the VE's response to purportedly incomplete hypothetical questions.  (Joint Stip. 2-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).  "Substantial Evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence, consistent with the entire record, which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir.

4

1997)(internal citations omitted); <u>see Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Administration's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Administration's] conclusion." <u>Ray v. Bowen</u>, 813 F.2d 914, 915 (9th Cir. 1987)(citation and quotations omitted); <u>see Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007)(same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. <u>See Torske v. Richardson</u>, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its own judgment for that of the [Commissioner]." <u>Reddick</u>, 157 F.3d 715, 720-21 (9th Cir. 1998)(internal citations omitted).

**APPLICABLE LAW**

"The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (citing 42 U.S.C. § 423 (d)(1)(A)). The impairment must "render[] the claimant incapable of performing the work [he or she] previously performed and . . . of performing any other

1  substantial gainful employment that exists in the national economy."

2  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C.

3  § 423(d)(2)(A)).

4

5       The ALJ follows a five-step, sequential analysis to determine

6  whether a claimant has established disability.  20 C.F.R. § 404.1520.

7  At step one, the ALJ determines whether the claimant is engaged in

8  substantial gainful employment activity.  Id. at § 404.1520(a)(4)(I).

9  "Substantial gainful activity" is defined as "work that . . . [i]nvolves

10  doing significant and productive physical or mental duties[] and . . .

11  [i]s done (or intended) for pay or profit."  20 C.F.R. §§ 404.1510,

12  404.1572.  If the ALJ determines that the claimant is not engaged in

13  substantial gainful activity, the ALJ proceeds to step two which is to

14  determine whether the claimant has a medically severe impairment or

15  combination of impairments that significantly limits his ability to do

16  basic work activities.  See Webb, 433 F.3d at 686; see also 20 C.F.R.

17  § 404.1520(a)(4)(ii).  The "ability to do basic work activities" is

18  defined as "the abilities and aptitudes necessary to do most jobs." 20

19  C.F.R. § 404.1521(b).  Webb, 433 F.3d at 686.  An impairment is not

20  severe if it is merely "a slight abnormality (or combination of slight

21  abnormalities) that has no more than a minimal effect on the ability to

22  do basic work activities."  Id.  If the ALJ concludes that a claimant

23  has a medically severe impairment, then step three requires the ALJ to

24  evaluate whether the claimant's impairment satisfies certain statutory

25  requirements entitling him to a disability finding.  Id.  If the

26  impairment does not satisfy the statutory requirements entitling the

27  claimant to a disability finding, the ALJ must determine the claimant's

28  residual functional capacity ("RFC"), that is, the  ability to do

6

physical and mental work activities on a sustained basis despite limitations from all of his impairments. (A.R. 13; 20 C.F.R. § 416.920(e)). Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last 15 years or 15 years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether – taking into account the claimant's age, education, work experience and RFC – there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Id.

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the ALJ's findings are supported by substantial evidence and are free from material[2] legal error.

///

///

---

[2]    The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (A decision of the ALJ will not be reversed for errors that are harmless).

**I.   Substantial Evidence Supports the ALJ's Conclusion Regarding the Plaintiff's Mental Residual Functional Capacity**

Substantial evidence supports the ALJ's assessment of Plaintiff's mental RFC.   RFC is defined as "the most [a claimant] can still do despite [a claimant's] limitations."   20 C.F.R. § 416.945(a).   After considering the entire record, the ALJ determined that Plaintiff had the mental RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following modifications: "[H]e . . . can occasionally interact with supervisors and coworkers; and never interact with the general public." (A.R. 15).   The ALJ's findings were based on her review of Plaintiff's medical records, the opinion of the consultative psychological examiner, and the state agency medical consultant.

Plaintiff's medical treatment records show that despite Plaintiff's claimed disability onset date of June 1991, Plaintiff was incarcerated for a significant portion of time from 1991 to 2010 and did not seek or receive mental health treatment for his depression until 2009.   (A.R. 17, 208-13).   Records from the California Department of Corrections and Rehabilitation ("CDCR") dated July 22, 2009 reflect that, "based on this initial screening, there is not an indication that this offender is suffering from a mental illness.   Referral to a mental health professional is not indicated."   (A.R. 213).   Treatment records from the CDCR in 2009 and 2010 revealed unremarkable clinical examination findings and reported that Plaintiff's behavior was "cordial" and "cooperative," and that he exhibited normal speech, affect, concentration, attention, memory, thought process, thought content, insight, and judgment.   (A.R. 203, 206, 211).   During an examination on

October 28, 2009, Plaintiff indicated that he feels confused and angry, but that "[he] knows it's not real." (A.R. 203).  In December 2009, Plaintiff's sleep and depression was noted to be improved and Plaintiff was observed as "highly motivated to address issues in [individual treatment]." (A.R. 219). A mental health evaluation in March 2010 described Plaintiff as "calm, alert, cooperative, coherent, [having a] good rapport, affect appropriate," and having "no abnormal/involuntary movements." (A.R. 215).  In September 2010, Plaintiff reported that he was doing well on his medications. (A.R. 299).  In addition, Plaintiff was assessed with a global assessment of functioning (GAF) score in the range of 55-65 at various times during his incarceration.[3]

The December 2010 consultative psychological evaluation of Melanie K. Moran, Ph.D., (A.R. 249-56), reported that Plaintiff was generally alert and cooperative, "oriented to time, place and person, and the purpose of the visit," and appeared interested in his improvement. (A.R. 252). Dr. Moran also noted that Plaintiff "interacted adequately,"  his

_____

[3]  Plaintiff's records from the California Department of Corrections and Rehabilitation note seven global assessment of functioning ("GAF") scores, ranging between 55 and 65.  (A.R. 204, 207, 215-17, 224-25). "The Global Assessment of Functioning Scale is a rating for reporting the clinician's judgment of the patient's overall level of functioning and carrying out activities of daily living.  The GAF Score is measured on a scale of 0-100, with a higher number associated with higher functioning."  Montalvo v. Barnhart, 457 F.Supp.2d 150 n.5 (W.D.N.Y. 2006).  A GAF score in the 61-70 Range indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  A GAF score in the 51-60 range corresponds to moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, AMERICAN PSYCHIATRIC ASSOCIATION 34 (4th ed. 2000).

"verbal response time was average" and his speech was "clear and well-modulated." (Id.).  Plaintiff's "[t]houghts were organized and productive" and Plaintiff did not show any specific psychomotor retardation. (Id.).  Plaintiff's conceptual level is in the average range, and he "did not show any peculiarities in stream of consciousness." (A.R. 253).  Dr. Moran noted that "[t]here was no blocking, confusion, bizarreness, or tangentiality . . . speech was not pressured or disorganized during the evaluation." (A.R. 253).  Plaintiff also reported that his medication was helping him and Dr. Moran noted that Plaintiff showed "an average range of expression during the assessment." (A.R. 252).  With respect to Plaintiff's adaptation to work-related activities, Dr. Moran concluded that Plaintiff "has the ability to learn simple skills," would "function best in a noninteractive setting," is able to "persist independently without supervision" and "relate[d] adequately [to authority] in a supportive environment." (A.R. 255).  Dr. Moran indicated that Plaintiff would have difficulty with normal interactional settings but concluded that Plaintiff "appears capable of maintaining a schedule," noting that he arrived on time for his examination, using public transportation. (A.R. 249, 255).

    The state agency medical consultant, R. Tashjian, M.D., found, based on his review of the record, that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (A.R. 15, 270).  Dr. Tashjian concluded that Plaintiff "retains the ability to understand, remember and carry out simple work-related tasks in a work setting [with] reduced

interpersonal contact" and that "there are no significant limitations in the ability to complete or adapt to the requirements of normal work." (A.R. 261).

The findings of Dr. Moran and Dr. Tashjian, coupled with Plaintiff's treatment records constitute sufficient evidence for the ALJ's assessment of Plaintiff's mental RFC. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (non-examining physician's opinion may constitute substantial evidence when opinion is consistent with independent evidence of record). See also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Contrary to Plaintiff's claims, the ALJ incorporated Dr. Moran's opinions into her determination that Plaintiff retained the mental RFC to do certain jobs. For example, based on Dr. Moran's assessment that Plaintiff would have difficulty with normal interactional settings and would "function best in a noninteractive setting," (A.R. 255), the ALJ determined that Plaintiff would have the ability to perform a job that required no interaction with the general public, and occasional interaction with supervisors and coworkers. (A.R. 15). Accordingly, the ALJ found, based on Dr. Moran's findings and the VE's testimony, that Plaintiff was able to work as a housekeeping cleaner, cafeteria, attendant and routing clerk, positions which did not require significant social interaction. (A.R. 19). Plaintiff's claim that the ALJ was

11

required to find Plaintiff disabled based upon Dr. Moran's finding that Plaintiff would have difficulty with normal interactional settings is unavailing. (Joint Stip. 4-5 (citing A.R. 254-55)). Dr. Moran did not opine that Plaintiff was incapable of any social interaction and her findings were consistent with the ALJ's determination that Plaintiff would be able to occasionally interact with supervisors and co-workers.

Plaintiff contends that the ALJ did not consider Dr. Tashjian's conclusion that Plaintiff has moderate difficulties in maintaining concentration, persistence or pace. (Joint Stip. 5 (citing A.R. 260)). The Ninth Circuit has held that a plaintiff who has moderate mental restrictions can still nonetheless conceivably be able to carry out "simple tasks." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008). Moreover, evidence that a claimant's condition is improving can support the ALJ's decision if "the severity of the problem had decreased sufficiently to enable him to engage in gainful activity." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). As set forth above, Plaintiff's treatment records and his admissions to Dr. Moran show that the medication he was taking caused his condition to improve.

Thus, the Court finds that the ALJ provided "specific and legitimate reasons supported by substantial evidence" for his mental RFC assessment and that her determination was supported by substantial evidence.

///

///

1   **II.   The ALJ Did Not Materially Err In Evaluating Plaintiff's**

2        **Credibility**

3

4        Plaintiff contends that the ALJ erred in her credibility assessment

5   of his subjective symptoms and functional limitations and failed to give

6   clear, specific and convincing reasons supported by substantial evidence

7   in the record.   (Joint Stip. 15-16).   In support of his position,

8   Plaintiff points out that the ALJ misstated the record in concluding

9   that Plaintiff was not truthful regarding his drug use, improperly

10  relied on Plaintiff's work activities during his incarceration, failed

11  to consider Dr. Moran's finding that Plaintiff had provided reliable

12  information, and failed to consider the third party statement of

13  Plaintiff's friend.   (Joint Stip. at 16-17).

14

15       An ALJ's assessment of a claimant's credibility is entitled to

16  "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir.

17  1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ may

18  not discount the claimant's testimony regarding the severity of the

19  symptoms without making "specific, cogent" findings. Lester v. Chater,

20  81 F.3d 821, 834 (9th Cir. 1995); see also Berry v. Astrue, 622 F.3d

21  1228, 1234 (9th Cir. 2010) (reaffirming same) but see Smolen, 80 F.3d

22  at 1283-84 (indicating that ALJ must provide "specific, clear and

23  convincing reasons to reject a claimant's testimony where there is no

24  evidence of malingering).   See Rashad v. Sullivan, 903 F.2d 1229, 1231

25  (9th Cir. 1990).[4] Generalized, conclusory findings do not suffice.  See

26  _____

27       [4]   In the absence of evidence of "malingering," most recent Ninth

28  Circuit cases have applied the "clear and convincing" standard.  See,
    e.g., Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012);

1   Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's

2   credibility findings "must be sufficiently specific to allow a reviewing

3   court to conclude the ALJ rejected the claimant's testimony on

4   permissible grounds and did not arbitrarily discredit the claimant's

5   testimony") (internal citations and quotations omitted); Holohan v.

6   Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must

7   "specifically identify the testimony [the ALJ] finds not to be credible

8   and must explain what evidence undermines the testimony"); and Smolen,

9   80 F.3d at 1284 ("The ALJ must state specifically which symptom

10  testimony is not credible and what facts in the record lead to that

11  conclusion."). See also Social Security Ruling 96-7p.

12

13      In the present case, the ALJ stated sufficient reasons for deeming

14  Plaintiff's testimony less than fully credible.  As set forth above,

15  Plaintiff's mental status examinations were largely unremarkable and did

16  not support Plaintiff's claimed limitations. The medical records also

17  indicated that Plaintiff's condition had improved with the medication

18  that he was taking. Although a claimant's credibility "cannot be

19  rejected on the sole ground that it is not fully corroborated by

20  objective medical evidence, the medical evidence is still a relevant

21  factor. . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

22  Here, the ALJ was entitled to consider the lack of medical evidence for

23  Plaintiff's claimed disability to support his finding that Plaintiff's

24

25  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v.
    Commissioner, 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v.
26  Commissioner, 574 F.3d 685, 693 (9th Cir. 2009); Ballard v. Apfel, 2000
    WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases).  As
27  set forth infra, the ALJ's findings in this case are sufficient under
    either standard, so the distinction between the two standards (if any)
28  is academic.

1    mental limitations were not as disabling as he claimed.

2

3        The ALJ also noted that Plaintiff had an extensive history of drug

4    use and reported that he last used drugs in May 2010, after serving a

5    13-month sentence for drug possession.  (A.R. 16-17).   Although

6    Plaintiff  contends that the ALJ misstated the record, the ALJ's

7    findings were supported by the record.   According to Dr. Moran, the

8    consultative examiner, Plaintiff "stated that he has been completely

9    sober and off drugs since April 2009." (A.R. 18).  See A.R. 251.

10   However, a mental health treatment record dated January 15, 2010, while

11   Plaintiff was in prison, revealed that Plaintiff's "drug of choice" is

12   heroin and that he has used it "1993-present." (A.R. 205). Similarly,

13   notes by a prison staff psychologist dated January 21, 2010 report

14   Plaintiff's history of drug use as "heroin 1993-present." (A.R 217).

15   Although some of Plaintiff's treatment records were inconsistent with

16   Plaintiff's statement to Dr. Moran, the ALJ was permitted to consider

17   this inconsistency as bearing on Plaintiff's credibility.   See Thomas

18   v. Barnhart, 278 F.3d 948, 959 (9th Cir. 2002) (inconsistent statements

19   about prior drug and alcohol use permissible to undermine claimant's

20   veracity); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)

21   (inconsistencies in claimant's various statements cited as a clear and

22   convincing reason for rejecting the claimant's testimony).

23

24       Plaintiff contends that the ALJ misconstrued the type of work

25   Plaintiff was doing while he was incarcerated and "erroneously pointed

26   to Plaintiff's work while incarcerated as a reason for finding

27   Plaintiff's assertions regarding his symptoms and functional limitations

28   not credible." (Joint Stip. 16).   Plaintiff testified at the

                                    15

administrative hearing that while he was in prison, he had performed some clerical work while in prison, answered the telephone, and "did a lot of research" for the assignment lieutenant. (A.R. 34-35).   He also stated that he worked at a water plant, which was essentially a "gardening" position but had not otherwise been gainfully employed since 1991 and was living largely on public assistance since his release from prison. (A.R. 35-36).   The ALJ noted these facts as relevant to his finding that Plaintiff had not sought gainful employment since his release from incarceration. (A.R. 16).   "[S]ince his 2010 release, he has not attempted to find any work . . . and now seeks Disability benefits . . . despite the lack of any effort on his behalf to productively contribute to his own income." (A.R. 16).   Plaintiff's work activity in prison, coupled with the lack of medical evidence to support a preset disability, was relevant to the ALJ's determination of Plaintiff's mental RFC and his ability to engage in gainful employment and the AlJ's reliance on this information was permissible. 20 C.F.R. § 416.929(c)(3) (all evidence presented may be considered "including information about [a claimant's] prior work record"). See also Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992)(claimant's well-documented motivation to obtain social security benefits is relevant when assessing credibility).

Plaintiff's claim that the ALJ was required to consider Dr. Moran's assessment that Plaintiff was "reliable" is without merit.   First, Plaintiff misinterprets the following statement in Dr. Moran's report to mean that Dr. Moran found Plaintiff to be credible: "The source of information was the claimant, who was a good historian.   The information contained herein is considered reliable." (A.R. 249).   That statement,

viewed in the context of the "identifying data" portion of Dr. Moran's report, did not represent an opinion regarding Plaintiff's overall credibility but was merely a statement of Dr. Moran's acceptance of the information Plaintiff provided about his background.   Second, even if this statement could be viewed as a credibility determination, Dr. Moran's belief regarding Plaintiff's credibility was not binding on the ALJ, who was required to make a credibility assessment based upon a review of the entire record.   Here, the ALJ properly considered the entire record in finding that Plaintiff was not completely credible. (A.R. 18, 255).

Plaintiff's contention that the ALJ failed to give significant weight to the third party function report authored by Plaintiff's friend is also without merit.   (Joint Stip. at 17).   The ALJ properly discredited these third-party statements, noting that Plaintiff claimed that he could pay attention "until things get complicated," and that his friend added that "the claimant becomes despondent and will cry." (A.R. 16).   An ALJ may reject lay testimony inconsistent with the medical evidence.   Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). See Molina v. Astrue, 674 F.3d 1104, 1117 (9th Cir. 2012) ("Where lay witness testimony does not describe any limitations not already described by the claimant . . . the  ALJ's well supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se."); Valentine v. Commissioner, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ provides clear and convincing reasons for rejecting the claimant's own subjective complaints and where lay witness testimony was

1   similar, ALJ also gave germane reasons for rejecting witness testimony).

2

3      The ALJ's credibility assessment was also based on inconsistencies

4   regarding the claimed disability onset date, Plaintiff's lack of regular

5   or consistent treatment, Plaintiff's statement that he was doing well

6   on his medication and his stated belief that his difficulties

7   interacting with others were based on his prison stay. (A.R. 17-18).

8   Thus, the ALJ concluded, after reviewing all the entire record, that

9   "the medical record provides little objective support for the claimant's

10  allegations and, in fact, highlight the claimant's devastating lack of

11  credibility and actual ability to work at a substantial gainful level

12  at or even above the residual functional capacity set forth." (A.R.

13  16).   The ALJ is permitted to "engage in ordinary techniques of

14  credibility evaluation such as considering claimant's reputation for

15  truthfulness." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir.

16  2005)(internal citation omitted).

17

18      The Court finds that the ALJ stated sufficient reasons to allow

19  this Court to conclude that the ALJ discounted Plaintiff's credibility

20  on permissible grounds. The Court therefore defers to the ALJ's

21  credibility determination.   See Lasich v. Astrue, 252 Fed. Appx. 823,

22  825 (9th Cir. 2007) (court will defer to ALJ's credibility determination

23  when the proper process is used and proper reasons for the decision are

24  provided); accord Flaten v. Secretary of Health and Human Services, 44

25  F.3d 1453, 1464 (9th Cir. 1995).   Where the ALJ has made specific

26  findings justifying a decision to disbelieve Plaintiff's symptom

27  allegations and those findings are supported by substantial evidence in

28  the record, "we may not engage in second guessing." Thomas v. Barnhart,

278 F.3d 947, 958-59 (9th Cir. 2002).

III.     **The ALJ Did Not Err In Questioning The Vocational Expert About Plaintiff's Ability To Perform Certain Jobs Given His Limitations**

Plaintiff contends that the hypothetical questions posed by the ALJ to the VE were incomplete because the questions did not include the "work-related limitations in mental functioning assessed by the consultative examiner, Dr. Moran." (Joint Stip. 25).  Specifically, Plaintiff contends that the ALJ failed to take into account the VE's statement - in response to a question posed by Plaintiff's counsel - that an individual restricted to "no contact with the general public, co-worker or supervisors" could not perform the jobs identified. (A.R. 26).  As set forth below, Plaintiff's argument is without merit.

The ALJ properly questioned the VE about whether someone of plaintiff's age and education, with certain physical constraints,[5] could "perform simple, repetitive tasks with occasional interaction with supervisors, co-workers and the general public." (A.R. 47).  In response to this question, the VE identified a number of medium and unskilled occupations that were available in substantial numbers in the regional

---

[5]   In the first hypothetical question to the VE, the ALJ asked whether a person with the same age and education as the claimant, who does not have any past relevant work, but who could "lift and carry 50 pounds occasionally, 25 pounds frequently; who could stand, walk and/or sit six hours out of an eight-hour day with normal breaks; who could perform frequent climbing, balancing, stooping, kneeling, crouching and crawling; who could be able to perform simple repetitive tasks with occasional interaction with supervisors, co-workers and the general public." (A.R. 47.)

and national economy, including: (1) hand packager; (2) cleaner; and (3) machine packager. (A.R. 47-48).  The ALJ proposed a second hypothetical that incorporated the same limitations as the first hypothetical, except that the individual would be "limited to occasional pushing and pulling with the bilateral lower extremity; occasional climbing, balancing, stooping, kneeling, crouching and crawling; should avoid work requiring far acuity; also avoid concentrated exposure to extreme cold, unprotected heights, hazardous machinery; also limited to simple, repetitive tasks with *occasional interaction with supervisors and co-workers, but no interaction with the general public*." (A.R. 48) (emphasis added).  The VE testified that such an individual could perform the medium and unskilled work of a general laborer and a day worker and that such occupations were available in substantial numbers in the regional and national economy.  (A.R. 49).  The ALJ's third hypothetical incorporated the same limitations of the previous hypothetical except that the lifting and carrying would be limited to 20 pounds occasionally, 10 pounds frequently. (Id.).  The VE testified that such an individual could perform the light and unskilled work of a housekeeping cleaner, cafeteria attendant, or a routing clerk and that such occupations were available in substantial numbers in the regional and national economy. (A.R. 50)  The fourth and final hypothetical incorporated the same limitations of the previous hypothetical but added the following additional limitations: "walk and/or sit six hours out of an eight-hour day with an assistive device,"(A.R. 50), and "able to perform simple, repetitive tasks with *occasional interaction with supervisors; only conversational interaction and contact with co-workers; no interaction with the public*." (A.R. 51) (emphasis added). The VE responded that such an individual could perform the light and

1  unskilled work of a bench assembler, electronics worker and production
2  assembler and that such occupations were available in substantial
3  numbers in the regional and national economy. (A.R. 51-52).

4

5      This testimony furnished substantial evidence for the ALJ's
6  determination that Plaintiff is not disabled.  See Bray v. Comm'r of
7  Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (vocational expert
8  opinion evidence is reliable to support a finding that a claimant can
9  work if hypothetical questioning "set[s] out *all* the limitations and
10 restrictions of a particular claimant") (citation omitted); see also 20
11 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); Bayliss v. Barnhart, 427 F.3d
12 1211, 1218 (9th Cir. 2005) ("A [vocational expert's] recognized
13 expertise provides the necessary foundation for his or her testimony.
14 Thus, no additional foundation is required.").

15

16     Plaintiff contends that the ALJ failed to consider the VE's
17 testimony that "someone interacting inappropriately with a supervisor
18 is not going to be tolerated." (A.R. 53-54).  This statement was in
19 response to a question posed by plaintiff's counsel who asked the VE
20 whether an individual with Plaintiff's age, education, work experience,
21 and RFC, who would have "*no contact* with the general public, co-workers
22 and supervisors," would be able to perform any job. (Id.)(emphasis
23 added).  However, the ALJ was not required to consider whether the
24 Plaintiff could perform jobs involving "*no contact* with the general
25 public, co-workers and supervisors" because such a limitation was not
26 supported by the record. Contrary to Plaintiff's contention, Dr. Moran
27 did not opine that Plaintiff *could not have any contact* with the general
28 public, co-workers or supervisors or that Plaintiff was *unable to*

*interact* in a normal interactional work setting.  Rather, Dr. Moran concluded that Plaintiff "may have difficulty . . . interacting with others on a regular basis . . . would function best in a non interactive setting" and also found that Plaintiff "related adequately to this authority figure in a supportive environment, but would have difficulty with normal interactional settings." (A.R. 255).  The ALJ took Dr. Moran's assessment of Plaintiff's limitations into account in determining Plaintiff's RFC and properly found, based on Dr. Moran's assessment and his review of the record as a whole, that Plaintiff, "*could occasionally interact with supervisors and coworkers and never interact with the general public*." (A.R. 15)(emphasis added).  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005) (hypothetical posed to VE may contain "all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  Because the limitation that Plaintiff's counsel incorporated in her questions to the VE - that Plaintiff can have no contact with the general public, co-workers or supervisors - was not supported by the record, the ALJ was not required to include this limitation in a hypothetical to the VE.  The ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." <u>Greger v. Barnhart</u>, 464 F.3d 968, 974 (9th Cir. 2006)(internal citation omitted).  Thus, the ALJ did not pose an incomplete or inappropriate hypothetical to the VE.

///

///

///

**CONCLUSION**

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.


LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED:   July 1, 2014.


/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

23